### In re WALTER.

District Court, S. D. New York.

Aug. 2, 1946.

Hahn & Golin, of New York City (J. Jacob Hahn, of New York City, of counsel), for trustee, Abraham I. Menin.

Isidor H. Lutzker, of New York City, for bankrupt.

COXE, District Judge.

This is a petition by a bankruptcy trustee to review a referee's order dismissing specifications of objection to a bankrupt's discharge, and granting the discharge.

The specifications are four in number, but it will be sufficient for the present purpose merely to consider those parts of the first and second specifications relating to a one-family dwelling and land at 202 Clayton Road, Scarsdale, N. Y. In the first specification it is charged that the bankrupt concealed his beneficial interest in this property with intent to hinder, delay or defraud his creditors; and in the second specification it is charged that the bankrupt made a false oath in omitting such interest from his schedules.

The bankrupt filed a voluntary bankruptcy petition on September 22, 1943, showing liabilities of $74,279.28, and no assets other than exempt property.

The undisputed facts with respect to the Scarsdale property are as follows: On June 20, 1942, the bankrupt and his wife entered into a contract for the purchase of the property for $12,100, payable $2,000 in cash, and the balance by the execution of a purchase money mortgage for $600 payable in 18 months, and by assumption of an existing mortgage on the property amounting to $9,500. The cash payment of $2,000 was made in checks of A. C. Walter & Co. Inc., a corporation owned and controlled by the bankrupt, and the amounts were charged to the bankrupt's personal account on the books of the company. Title to the property was taken in the name of the bankrupt's wife on June 25, 1942. The monies used by the bankrupt to make the cash payment of $2,000 for the purchase of the property were procured from various sources; $570 was borrowed on insurance policies on the bankrupt's life; $141 was obtained on the surrender of educational policies maintained for the bankrupt's children; $950 was borrowed from the National City Bank on the security of an automobile owned by the bankrupt; and the balance of about $265 came from monies which the bankrupt said had been loaned by the bankrupt's mother-in-law to A. C. Walter & Co. Inc., "a year or two

before." The bankrupt's wife at no time had any money of her own, and, after the delivery of the deed, all interest and principal payments on the mortgages and all payments of taxes on the property, were made solely from the bankrupt's personal funds. The property is apparently still in possession of the bankrupt and his family.

The evidence is clear that the bankrupt was insolvent at the time of the purchase of the Scarsdale property and at all times thereafter prior to bankruptcy. On October 5, 1942, the bankrupt verified an answer in an action then pending against him and others in the Supreme Court, Westchester County, in which he admitted that he "was and still is actually insolvent" and "was unable to pay his obligations when due on or before April 1, 1942." On April 5, 1943, the bankrupt gave the following sworn testimony in an examination in supplementary proceedings:

"Q. What are your present personal liabilities and assets? A. Approximately $42,000 in liabilities, mostly on personal note endorsements from business obligations. Assets are only: Buick 1941 sedan, mortgaged still for about $500, National City Bank holds mortgage; *equity in home, if any;* and current salary weekly."

The referee made the following finding with respect to the monies used for the purchase of the Scarsdale property:

"4. That the money used for the down payment on the house was raised principally (a) by the bankrupt's wife getting some money from her mother; (b) by selling the children's life insurance policies; (c) by borrowing on the life insurance of the bankrupt, which named bankrupt's wife as beneficiary; (d) by borrowing money from the National City Bank on the family automobile".

This finding is clearly erroneous, as the undisputed facts are that at least $1,520 of the $2,000 cash payment for the purchase of the Scarsdale property certainly came entirely from the bankrupt's personal funds. It is also clear that the bankrupt considered the property his own, even though the title was in the name of the bankrupt's wife.

I find, therefore, that the bankrupt had a beneficial interest in the Scarsdale property at least to the extent of $1,520, and that this interest was concealed with intent to hinder, delay or defraud creditors. This was a continuing concealment down to and after bankruptcy. In re Baxter, D.C., 27 F.Supp. 54; Duggins v. Heffron, 9 Cir., 128 F.2d 546; In re Huntley, D.C., 14 F.Supp. 784; In re Wilfert, D.C., 19 F.Supp. 307. It follows, also, that the bankrupt made a false oath when he omitted this beneficial interest in the property from his schedules. Duggins v. Heffron, supra; In re Wilfert, supra.

Insofar as the first and second specifications refer to the bankrupt's beneficial interest in the Scarsdale property, they are sustained, and the referee's order is to that extent reversed, and the bankrupt's discharge denied.